USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/25/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
DOROTHY NESKE and CHRISTOPHER       :
NESKE, as Parents and Natural Guardians of  :
A.N., and DOROTHY NESKE and          :
CHRISTOPHER NESKE, Individually,     :
                                     :
                         Plaintiffs, :     20-CV-3912 (VEC)
          - against -                :
                                     :     OPINION
                                     :
NEW YORK CITY DEPARTMENT OF          :
EDUCATION,                           :
                         Defendant.  :
-------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

For the third time, the parents and guardians of a minor, A.N., seek an order from this Court compelling the New York City Department of Education ("DOE") to pay A.N.'s tuition at the International Institute for the Brain ("iBrain"), a private school for children with special needs. DOE has moved to dismiss Plaintiffs' Complaint; Plaintiffs have cross-moved for a preliminary injunction pursuant to 20 U.S.C. § 1415(j), the so-called "stay-put" or "pendency" provision of the Individuals with Disabilities Education Act ("IDEA"). For the reasons discussed below, DOE's Motion to Dismiss is GRANTED, and Plaintiffs' Cross-Motion for a Preliminary Injunction is DENIED.

**I.   Background**

A.N. is a ten-year-old child who has learning disabilities caused by a brain injury. Compl., Dkt. 1 ¶ 7. Plaintiffs have filed many actions before New York state administrative bodies and this Court to compel the DOE to fund A.N.'s tuition at iBrain. A brief review follows that places this lawsuit within this web of proceedings.

For the 2017-18 school year, Plaintiffs unilaterally enrolled A.N. at the International Academy of Hope ("iHope") because, they asserted, the DOE had not offered A.N. a free and appropriate public education ("FAPE"). Compl. ¶¶ 10–11. Plaintiffs then sought reimbursement from DOE for A.N.'s tuition at iHope. *Id.* On March 6, 2018, an Impartial Hearing Officer ("IHO") agreed with Plaintiffs that DOE had not developed an appropriate Individualized Education Program ("IEP") for A.N. for the 2017-18 school year, determined that iHope provided a suitable program for A.N., and ordered full reimbursement of tuition and other costs of A.N.'s attendance. Findings of Fact and Decision ("FOFD"), Dkt. 22-1 at 11; Compl. ¶ 11. The DOE did not appeal that decision. Compl. ¶ 12.

Despite the IHO's finding that iHope (the school the parents had chosen) was an appropriate placement, Plaintiffs unilaterally moved A.N. for the 2018-19 school year, this time to iBrain. Compl. ¶ 14. On the day that A.N. began attending iBrain, Plaintiffs filed another due process complaint against DOE, alleging that A.N. had not been offered a FAPE for the 2018-19 school year and requesting a pendency order for A.N. at iBrain. Compl. ¶ 15. A pendency order would require DOE to fund A.N.'s tuition and related costs at iBrain pending the resolution of Plaintiffs' due process complaint. *See* 20 U.S.C. § 1415(j); *Doe v. E. Lyme Bd. of Educ.*, 790 F.3d 440, 452 (2d Cir. 2015). The IHO denied Plaintiffs' request for interim funding at iBrain, found that iHope was A.N.'s pendency placement, and directed DOE to fund A.N.'s costs of attendance at iHope. Pendency Order, Dkt. 22-3 at 10; Compl. ¶ 17.

Plaintiffs sued, seeking vacatur of the IHO's Order and a preliminary injunction compelling DOE to provide pendency funding at iBrain for the 2018-19 school year on the theory that the programs offered at iHope and iBrain were substantially similar. *See* Compl., 19-CV-2933, Dkt. 1. On August 2, 2019, this Court dismissed that lawsuit, holding that 20 U.S.C. §

2

1415(j) does not permit a parent to compel the school district to fund as a pendency placement tuition at a new school to which the parent has unilaterally moved his or her child pending adjudication of the student's due process complaint. *See Neske v. New York City Dep't of Educ.*, No. 19-CV-2933, 2019 WL 3531959, at *8 (S.D.N.Y. Aug. 2, 2019) ("*Neske I*"). On November 7, 2019, the Court denied Plaintiffs' motion to reconsider *Neske I*, finding that Plaintiffs were impermissibly attempting to relitigate settled issues. *See Neske v. New York City Dep't of Educ.*, No. 19-CV-2933, 2019 WL 5865245, at *4 (S.D.N.Y. Nov. 7, 2019) ("*Neske II*"). On November 12, 2020, the Court of Appeals for the Second Circuit affirmed *Neske I* and *Neske II*. *See Neske v. New York City Dep't of Educ.*, 824 F. App'x 81 (2d Cir. 2020) ("*Neske III*").[1]

For the 2019-20 school year, Plaintiffs again filed a due process complaint against DOE, alleging that A.N. had not been offered a FAPE for the 2019-20 term and again requesting a pendency order requiring DOE to fund A.N.'s tuition at iBrain. Compl. ¶ 21. Soon after, Plaintiffs sued, seeking an order directing DOE to fund A.N.'s costs of attendance at iBrain as his pendency placement and to compel the DOE to assign an IHO and to comply with statutory timelines governing such due process proceedings. Compl. ¶ 38; Compl., 19-CV-8817, Dkt. 1. On July 20, 2020, five months before the Second Circuit decided *Neske III*, this Court dismissed that lawsuit. *Neske v. Carranza*, No. 19-CV-8817, Dkt. 65 (S.D.N.Y. July 20, 2020) ("*Neske IV*"). In *Neske IV*, this Court held that dismissal was required pursuant to *Ventura de Paulino*, a Second Circuit decision in a virtually identical case initiated by parents of an iHope-to-iBrain transfer student, which held that plaintiffs had failed to state a claim pursuant to 20 U.S.C. §

---

[1] While this litigation was playing out in federal court, the New York state administrative process continued to consider the parents' request for pendency funding for the 2018-19 school year. On February 24, 2020, the IHO issued a Final Order denying relief, finding that equitable considerations weighed against the parents. Compl., Dkt. 1 ¶ 34; FOFD, Dkt. 22-6. On June 8, 2020, the IHO's Order was affirmed by a State Review Officer ("SRO"). DOE Letter, Dkt. 23 at 2; SRO Final Order, Dkt. 23-1.

1415(j). *Neske IV* at 2 (citing *Ventura de Paulino v. New York City Dep't of Educ.*, 959 F.3d 519, 534–37 (2d Cir. 2020) ("[W]hat the parent cannot do is determine that the child's pendency placement would be better provided somewhere else, enroll the child in a new school, and then invoke the stay-put provision to force the school district to pay for the new school's services on a pendency basis.")).

Meanwhile, on April 15, 2020, the IHO had issued a Pendency Order for the 2019-20 school year, finding that A.N.'s educational program at iBrain was substantially similar to his educational program at iHope and ordering DOE to fund A.N.'s tuition at iBrain, pending the final resolution of the proceedings. Compl. ¶ 39; Pendency Order, Dkt. 22-9. In his Order, the IHO lamented that although the Second Circuit had not yet decided *Ventura de Paulino*, he felt that he could no longer delay publishing his decision. Pendency Order at 3. On April 29, 2020, DOE informed Plaintiffs that it planned to appeal the Pendency Order and would not comply with it. Compl. ¶ 41. On May 1, 2020, Plaintiffs filed this case to compel DOE to comply with the Pendency Order for the 2019-20 school year.[2]

DOE maintains that binding Second Circuit precedent renders the IHO's Pendency Order obsolete and compels dismissal of this action. Def. Mem. of Law, Dkt. 21 at 7.[3] Plaintiffs argue that DOE has misapplied relevant Second Circuit precedent, which they contend supports

---

[2]  After having filed their first two cases in the Southern District of New York, Plaintiffs inexplicably filed this, their third lawsuit, in the Eastern District of New York. Soon after the Complaint was filed, Judge Komitee of the Eastern District transferred the case to the Southern District of New York, where it was assigned to the undersigned as a related case; Judge Komittee noted that the "strong policy favoring the litigation of related claims in the same tribunal" weighed in favor of the transfer. Transfer Order, Dkt. 15 at 6–7 (citing *Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 619 (2d Cir. 1968)).

[3]  DOE argued in the alternative that the Court should stay the action until DOE's administrative appeal had been resolved. Def. Mem. of Law, Dkt. 21 at 11. While the parties were briefing DOE's Motion to Dismiss and Plaintiffs' Cross-Motion for a Preliminary Injunction, an SRO reversed the IHO's Pendency Order, relying on *Ventura de Paulino*. Decision, Dkt. 23-2 at 8–9 ("Overall, the parents have not pointed to a persuasive argument in support of their position that the Second Circuit's pendency determination on a similar legal issue and essentially identical facts should not apply in the present matter."). After the SRO reversed the IHO, DOE withdrew its request for a stay as moot. DOE Letter at 3.

4

enforcement of the now-reversed IHO's Pendency Order and requires the Court to issue a preliminary injunction ordering DOE to fund A.N.'s attendance at iBrain. Pl. Mem. of Law, Dkt. 27 at 20. Plaintiffs argue in the alternative that even were the Court to find that Second Circuit precedent compels dismissal, the Court should nevertheless order DOE to fund A.N.'s tuition at iBrain for the period between the filing of their due process complaint and the Second Circuit's decision in *Ventura de Paulino*. *Id.* at 26.

## II.     Motion to Dismiss

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a Rule 12(b)(6) motion to dismiss, the Court draws all reasonable inferences in the light most favorable to the plaintiff. *See Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013) (citation omitted).

The statutory provision at issue, Section 1415(j), states that "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child . . . ." 20 U.S.C. § 1415(j). The "then-current educational placement" refers to the last agreed upon placement when the due process proceeding is commenced. *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 86 F. Supp. 2d 354, 358–59 (S.D.N.Y. 2000), *aff'd*, 297 F.3d 195 (2d Cir. 2002). Plaintiffs argue, and the IHO agreed, that the "then-educational placement" refers to an educational program and not a brick and mortar location. Pendency Order at 5; Pl.

Mem. of Law at 22.  The IHO concluded that because the educational program at iBrain is substantially similar to the program at iHope, the last school DOE and Plaintiffs agreed upon as appropriate for A.N., Plaintiffs were entitled to DOE funding to reimburse the costs of attendance at iBrain during the pendency of Plaintiffs' due process proceedings.  Pendency Order at 5.

But this interpretation of 20 U.S.C. § 1415(j) has been resoundingly rejected by the Second Circuit, in three separate decisions involving iHope-to-iBrain transferees, including one in earlier litigation involving these very Plaintiffs.[4]  In its first decision, *Ventura de Paulino*, the Second Circuit held that "parents are not entitled to such public funding because it is generally up to the school district to determine how an agreed-upon program is to be provided during the pendency of the IEP dispute." 959 F.3d at 525.  The Second Circuit found that it was an error of law to consider whether two programs are substantially similar because "when the Parents unilaterally enrolled the Students at iBRAIN, the Parents did so at their own financial risk." *Id.* In the second decision, *Neske III*, the Second Circuit affirmed the undersigned's decision to dismiss of an earlier iteration of the dispute between A.N. and the DOE, finding that *Ventura de Paulino* and the matter at hand involved "an identical set of material facts and legal issues." *Neske III*, 824 F. App'x at 81.  The Second Circuit held that its earlier conclusion that a "'parent cannot unilaterally transfer his or her child and subsequently initiate an IEP dispute to argue that the new school's services must be funded on a pendency basis' … squarely applies to the instant appeal." *Id.* at 81–92 (citing *Ventura de Paulino*, 959 F.3d at 536).  In the third decision, *Soria v. New York City Dep't of Educ.*, the Second Circuit again reiterated its holding that parents cannot receive pendency funding when they unilaterally transfer their children, regardless of

---

[4] The parties only discuss the first of these three decisions because the latter two came down after the Motions in this matter had been fully briefed.

whether the new program is "substantially similar" to the previous one.  831 F. App'x 16, 18 (2d Cir. 2020).

In this lawsuit, Plaintiffs attempt to relitigate these issues, arguing yet again that DOE must fund pendency placements if the program the parents unilaterally select is substantially similar to the last agreed upon placement.  Pl. Mem. of Law at 21–22.  But Plaintiffs made this same point to the Second Circuit in *Neske III*, where it was rejected as "merely a backdoor attempt at relitigating the key issue that we decided in *Ventura de Paulino*."  824 F. App'x at 82.  Substantial similarity is irrelevant when parents unilaterally move their child to a different school.  *Id.*  Because the parents unilaterally moved A.N. from iHope to iBrain, DOE is not required to fund A.N.'s costs of attendance at iBrain as his pendency placement, even if the two programs are substantially similar.

Plaintiffs further argue that the just-discussed Second Circuit precedent does not apply because this action falls within a recognized exception discussed in *Ventura de Paulino*.  Pl. Mem. of Law at 23–24.  Footnote 65 of that decision states that its holding does not apply to situations "where the school providing the child's pendency services is no longer available and the school district either refuses or fails to provide pendency services to the child."  *Ventura de Paulino*, 959 F.3d at 534, n.65.  Plaintiffs argue that both conditions are met in this matter.

With respect to the first condition, that the school is no longer available, Plaintiffs admit that iHope is still available, but they assert that "it is vastly different" from the school that existed when A.N. was enrolled.  Pl. Mem. of Law at 24.  That factual allegation is not in Plaintiffs' Complaint; it appears only in their memorandum of law.  Moreover, this is not the first time Plaintiffs have made this argument.  In *Neske III*, Plaintiffs similarly argued that iHope had drastically changed.  824 F. App'x at 82, n.2.  But the Second Circuit declined to consider this

point after finding that "this factual allegation is not in their complaint, nor have the Neskes sought leave to amend their complaint to add it." *Id.* Accordingly, just like in *Neske III*, the Court declines to consider whether supposed changes at iHope are sufficient to distinguish *Ventura de Paulino* from the facts at hand. *See Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 71 (2d Cir. 1998) (holding that a district court is limited to the factual allegations contained within the four corners of the complaint when considering a motion to dismiss for failure to state a claim); *see also Soria*, 831 F. App'x at 18 ("[L]ike the appellants in *Neske*, the Sorias never alleged in their complaint that iHOPE was effectively 'unavailable' because it had changed so drastically, and we decline to consider that argument for the first time on appeal.") (citing *Mellon Bank, N.A. v. United Bank Corp. of N.Y.*, 31 F.3d 113, 116 (2d Cir. 1994)) (internal citation omitted).

Plaintiffs fare no better when it comes to the second condition in footnote 65, which requires a demonstration that the school district either refuses or fails to provide pendency services to the child. *Ventura de Paulino*, 959 F.3d at 534, n.65. Plaintiffs argue that DOE failed to provide pendency services to A.N. because it did not take any "affirmative measures to secure A.N. a seat at iHOPE or another school of its choosing that was capable of implementing his pendency program." Pl. Reply, Dkt. 29 at 6.[5] But this argument also has been rejected by the Second Circuit in all three of its decisions concerning iHope-to-iBrain transferees. In each of the three cases, the Second Circuit found that no affirmative act is required on the part of DOE; iHope became the pendency placement by operation of law at the moment DOE chose not to appeal the IHO's ruling that iHope was an appropriate placement. *Ventura de Paulino*, 959 F.3d

---

[5] This argument has also been adopted by at least two Impartial Hearing Officers. *See* Pendency Order at 6 (finding that iHope is not the pendency placement because there is "nothing in the record to suggest that the DOE did anything to facilitate the student's placement at iHope under pendency during the current school year"); Pendency Order, Ex. A, Pl. Reply at 4–6.

at 532; *Neske III*, 924 F. App'x at 82; *Soria*, 831 F. App'x at 18.  Following this binding precedent, the Court rejects Plaintiffs' argument that DOE is required to take affirmative measures to secure A.N.'s placement at iHope in order for the school to be A.N.'s pendency placement.

Plaintiffs further argue that DOE failed to provide pendency services to A.N. because "the IEP DOE *offered* A.N. for implementation at P.S. R037 is radically different than the pendency placement to which he was entitled by law."  Pl. Mem. of Law at 22–23 (emphasis added).  But DOE's offer of a different placement for A.N. has nothing to do with DOE's obligation to fund A.N.'s pendency placement at iHope.  Section 1415(j) requires pendency funding at the child's "then-current educational placement," in this case iHope, unless the educational agency and the parents otherwise agree.  20 U.S.C. § 1415(j).  Had A.N.'s parents accepted DOE's offer to enroll A.N. at P.S. R037, then that school would constitute A.N.'s pendency placement.  But from the record, it appears that Plaintiffs did not accept that offer, leaving A.N.'s pendency placement at iHope.  The fact that DOE was exploring other options and proposing them to Plaintiffs does not mean that DOE failed to provide pendency services to A.N.

In short, three Second Circuit decisions with identical facts, including one involving the same parties as this matter, require dismissal of this action.

### III.     Cross-Motion for a Preliminary Injunction

For the same reasons that the Court grants DOE's Motion to Dismiss, Plaintiffs are not entitled to a preliminary injunction ordering DOE to fund A.N.'s costs of attendance at iBrain as his pendency placement.  The only remaining issue in Plaintiffs' Cross-Motion for a Preliminary Injunction is whether DOE should be required to fund A.N.'s attendance at iBrain from July 9,

9

2019, the date Plaintiffs filed their initial due process complaint, to May 17, 2020, the day before the Second Circuit decided *Ventura de Paulino*. Pl. Mem. of Law at 26. Plaintiffs contend that as soon as the IHO issued his Pendency Order, DOE was required to fund the costs of A.N.'s attendance at iBrain because 20 U.S.C. § 1415(j) acts as an automatic injunction. *Id.* at 11, 14; Pl. Reply at 9–10, n.3 (citing *Zvi v. Ambach*, 694 F.2d 904, 906 (2d Cir. 1982)). Additionally, Plaintiffs argue that the fact that DOE told Plaintiffs that it intended to appeal the Pendency Order to the State Review Officer did not mean that DOE then had the right to refuse to comply with the IHO's Order. Pl. Mem. of Law at 19. Plaintiffs further note that DOE could have, but did not, seek a stay of enforcement of the Order, *id.* at 16, and Plaintiffs are not required to exhaust administrative remedies before pursuing an action seeking an automatic injunction to enforce pendency funding. *Id.* at 19 (citing *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 199 (2d Cir. 2002)). Moreover, Plaintiffs argue, any decision that DOE does not owe this funding would constitute an unwarranted retroactive application of *Ventura de Paulino*. *Id.* at 26–27 (citing *Chevron Oil Co. v. Huson*, 404 U.S. 97, 98 (1971)).

The Court rejects these arguments. The Court simply has no basis to order the DOE to fund A.N.'s costs of attendance at iBrain when it is unambiguously clear that iBrain is not A.N.'s pendency placement. As this Court held in *Neske I*, which was decided almost a year before the IHO's Pendency Order, Plaintiffs cannot use IDEA's stay-put provision as a vehicle to seek public funding for their unilateral decision to select a new private school in which to enroll their child. *Neske I*, 2019 WL 3531959, at *7–8. *See also Melendez v. New York City Dep't of Educ.*, No. 19-CV-2928, 2020 WL 4273907, at *7 (S.D.N.Y. July 24, 2020), *recons. den.*, No. 19-CV-2928, 2020 WL 5117948 (S.D.N.Y. Aug. 31, 2020) (declining to issue a preliminary injunction ordering DOE to fund an iHope-to-iBrain transfer student's pendency funding at iBrain even

though the IHO had found that iBrain was the proper pendency placement); *Mendez v. New York City Dep't of Educ.*, No. 19-CV-02945, 2020 WL 6048203, at *1–2 (S.D.N.Y. Oct. 13, 2020) (same). Because the Court has determined that DOE has not violated Plaintiffs' pendency rights,[6] Plaintiffs have not been damaged.

Even if the Court had found that Plaintiffs' pendency rights had been violated, Plaintiffs would still not be entitled to an injunction. As this Court found in *Neske I*, a preliminary injunction pursuant to 20 U.S.C. § 1415(j) is not justified when there is no meaningful threat to the child's learning experience. *Neske I*, 2019 WL 3531959, at *8, n.7.[7] And, as the DOE noted, Plaintiffs do not allege any facts in their Complaint to support the suggestion that A.N.'s education is at any risk of disruption or that he will be otherwise harmed absent a preliminary injunction. Def. Br., Dkt. 28 at 23. Without any facts to support the notion that A.N.'s education will be affected absent an injunction, a preliminary injunction remains unwarranted.

---

[6] Even if the Court had found that DOE owed Plaintiffs funding for this time period, the Court would not have the authority to order a preliminary injunction while also dismissing the case. *See Navarro Carrillo v. New York City Dep't of Educ.*, No. 20-CV-1657, 2020 WL 3867137, at *3 (E.D.N.Y. July 9, 2020) (collecting cases holding that a preliminary injunction does not survive the dismissal of a complaint in yet another action brought in connection with an iHope-to-iBrain transfer).

[7] The undersigned is not alone in so finding. Judge Koeltl held that "Section 1415(j) is only triggered when the requested injunction concerns circumstances likely to significantly affect a child's learning experience." *Fiallos v. New York City Dep't of Educ.*, 19-CV-334, Dkt. 36, at 19, 22 (S.D.N.Y. Apr. 5, 2019) (citing *Cronin v. Bd. of Educ. of East Ramapo Cent. Sch. Dist.*, 689 F. Supp. 197, 202 (S.D.N.Y. 1988)). Additionally, in *Cohen v. New York City Dep't of Educ.*, Judge Furman noted in dicta that the stay-put provision's automatic injunction had "less purchase . . . in a case where there is no meaningful threat that a student will be removed from his pendency placement." *Cohen v. New York City Dep't of Educ.*, No. 18-CV-11100, 2018 WL 6528241, at *2 (S.D.N.Y. Dec. 12, 2018). In describing this finding, Judge Gardephe opined that *Cohen* did not overturn well-settled law that a pendency injunction is automatic, without a need to demonstrate irreparable harm, but instead was simply making "the commonsense observation that plaintiffs — having prevailed before the hearing officer on pendency, and having not received any threat of expulsion or demand for tuition payments — had not shown that any 'true danger exists' that would justify injunctive relief." *Cruz v. New York City Dep't of Educ.*, No. 18-CV-12140, 2019 WL 147500, at *9 (S.D.N.Y. Jan. 9, 2019) (citing *Cohen*, 2018 WL 6528241, at *2)). Although plaintiffs do not need to demonstrate irreparable harm when seeking a pendency injunction, the fact remains that an injunction is an extraordinary remedy that the courts need not provide when plaintiffs have failed to raise even a specter of potential harm to the child.

Plaintiffs are also not entitled to a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure. To obtain a preliminary injunction pursuant to Rule 65, a plaintiff must show: (1) a likelihood of success on the merits; (2) that the plaintiff is likely to suffer irreparable injury in the absence of an injunction; (3) that the balance of hardships tips in the plaintiff's favor; and (4) that an injunction is in the public interest. *Capstone Logistics Holdings, Inc. v. Navarrete*, 736 F. App'x 25, 26 (2d Cir. 2018); *North American Soccer League, LLC v. United States Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018).[8] Plaintiffs have not made such a showing. As described above, three Second Circuit decisions compel dismissal of this action, demonstrating that Plaintiffs have no likelihood of success on the merits. Moreover, Plaintiffs have not demonstrated that A.N. is likely to suffer any harm, let alone an irreparable injury, without an injunction. With no way to satisfy the first two criteria, Plaintiffs are not entitled to a Rule 65 preliminary injunction.

In short, Plaintiffs have not shown that they are entitled to a Section 1415(j) preliminary injunction to fund A.N.'s costs of attendance at iBrain for the period between their filing of the initial due process complaint and the Second Circuit's decision in *Ventura de Paulino* because their pendency rights were not violated and they have not demonstrated that there is any meaningful threat to A.N.'s education. Moreover, Plaintiffs have not demonstrated that they are entitled to a Rule 65 preliminary injunction because they have no chance to succeed on the merits, and they have not established irreparable harm. Accordingly, Plaintiffs' Cross-Motion for a Preliminary Injunction is denied.

---

[8] DOE argues that Plaintiffs must meet a heightened standard of proof to obtain a Rule 65 preliminary injunction. Def. Br., Dkt. 28 at 20–22. In circumstances that "alter rather than maintain the status quo," the moving party "must show a 'clear' or 'substantial' likelihood of success" on the merits. *N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2012) (citing *Bronx Household of Faith v. Bd. of Educ.*, 331 F.3d 342, 349 (2d Cir. 2003)). Because the Court finds that Plaintiffs did not meet the lower threshold of proof used in most circumstances, the Court declines to consider whether the heightened preliminary injunction standard is appropriate here.

## IV. Conclusion

For the reasons discussed above, Plaintiffs have failed to state a plausible claim for relief, and they have failed to establish the requisite criteria for a preliminary injunction. Accordingly, DOE's Motion to Dismiss is GRANTED, and Plaintiffs' Cross-Motion for a Preliminary Injunction is DENIED.

The Clerk of Court is respectfully directed to terminate all pending motions and deadlines and close this case.

**SO ORDERED.**

Date: February 25, 2021
New York, New York

_____
**VALERIE CAPRONI**
**United States District Judge**